## Mahan v. Buchanan.

July 19, 1949.

T. E. Sparks for appellant.

A. E. Funk, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellant petitioned for a writ of habeas corpus. After a hearing the Trial Judge denied the writ. This appeal is prosecuted from that order.

Petitioner, Joseph Mahan, was convicted in the

Todd Circuit Court of the crime of armed assault with intent to rob and given Life in the Penitentiary. He was committed to the State Penitentiary at Eddyville on the 18th day of December 1935, where he served continuously until the 20th day of December 1944, when he was granted a parole by the Department of Welfare. After receiving his parole he returned to Central City in Muhlenberg County, his native City and County, and made his home with his mother and sister. It appears that he was engaged in gainful occupation and had succeeded in rehabilitating himself. He was visited periodically by parole agents of the Department of Welfare. He made all reports as required of parolees until he was notified by the Department of Welfare that no further reports would be required of him.

In the latter part of 1947 he became involved in some sort of altercation, after which he and the other parties involved were indicted by the Grand Jury of the Muhlenberg Circuit Court. Two indictments were returned against Mahan. In one indictment he was charged with malicious shooting and wounding and in the other with carrying concealed a deadly weapon. He applied for and was released on bond. Parole agents of the Department of Welfare investigated this incident and made report to the Department. No alteration of Mahan's parole status was made. Apparently nothing was done about the indictments although they remained on the docket in Muhlenberg Circuit Court.

On October 20, 1948, the residence of Arthur Bobbitt, situated in Central City, was fired into by some unidentified person. Two warrants of arrest were procured against Joseph Mahan. He was immediately arrested and placed in Central City Jail where he remained a couple of days, after which he was removed to the County Jail in Greenville where he was held until October 28th when he was transferred to the Penitentiary at Eddyville on an executive warrant issued by the Department of Welfare.

At the January term 1949 of the Muhlenberg Circuit Court the Grand Jury returned two indictments against Mahan, one charging him with malicious shooting with intent to kill without wounding and the other charging him with carrying concealed a deadly weapon. Pursuant

to order directing the Warden of the Eddyville Penitentiary to return Mahan for trial, he was returned and was presented for trial on all four of the charges, that is, the two earlier indictments in 1948, and the latter two. The Commonwealth elected to try Mahan on the indictments charging malicious shooting with intent to kill without wounding. Upon trial the Jury returned a verdict of not guilty. The Commonwealth Attorney then moved the court to dismiss all other charges contained in the other three indictments and it was so ordered by the court.

It appears that while Mahan was in the Central City Jail he was visited by a parole agent for the Department of Welfare, who informed Mahan that an investigation of the charges against him was being made. Following investigation the parole agent made his report. This report contains numerous matters in addition to and other than those upon which the indictments rested.

Petitioner takes the position that because he had adequate defense to the charges made, and since he was tried and acquitted, the Welfare Department by its arbitrary action against him denied him due process of law.

Although admitting that the petitioner forfeited and lost his constitutional right to liberty and freedom upon his conviction in the Todd Circuit Court, it is insisted that the granting of a parole to him restored certain rights; that he thereby earned and regained his constitutional right to freedom and liberty; and that same could not be wrested from him by any executive, administrative, or legislative authority without due process of law. It is contended by appellant that by his certificate of parole he was granted and restored to the right of freedom and liberty as guaranteed to all citizens under the Fourteenth Amendment to the Constitution of the United States, and the Second and Eleventh Sections of the Bill of Rights of the Commonwealth of Kentucky, and that such right could not be taken from him without due process of law. In support of that position appellant cites the case of Fleenor v. Hammond, etc., 6 Cir., 116 F. 2d 982, 132 A. L. R. 1241.

We think the Fleenor case does not support appellant in his position. Fleenor had been granted a conditional pardon. This was revoked by a succeeding

Governor without notice to Fleenor or hearing of any kind or nature whatsoever. In the instant case we are dealing with the matter of a parole, the provisions concerning which are statutory. The distinction between a pardon and parole is clearly set out in 39 Am. Jur., Pardon, Reprieve and Amnesty, Section 11, which reads as follows: "A parole, especially such as is contemplated by most statutes providing therefor, is distinguishable from a pardon and from a conditional pardon. The parole intended by most of these statutes does not end the sentence, and, whatever may be the theory of a parole on general principles, those granted under some statutes do not even suspend the sentence. The prisoner is not a free man while out on parole, and he continues to serve time on his sentence until the expiration thereof. Parole statutes simply provide for a different manner of serving a sentence than by confinement in a prison. A power to pardon is something more than a power to parole or a power to release from servitude."

We need only look to the statutes to ascertain the status of the parolee and the authority and power of the Department of Welfare. KRS 439.150 provides: "Prisoners paroled from the penitentiary shall at all times during the continuance of the parole be under the control and supervision of, and subject to the orders, rules and directions of and in the legal custody of the department."

KRS 439.190(1) provides: "The department may, with the approval of the Governor, whenever a paroled prisoner violates the conditions of his parole or commits any offense, or whenever, in the opinion of the department, the welfare of the paroled prisoner or of society demands such action, cause the paroled prisoner to be rearrested, retaken to and reconfined in the penitentiary."

We note under KRS 439.150 above, that the parolee is at all times during the continuance of the parole in the legal custody of the Department. Mahan was already in the legal custody of the Department. The mere fact that he was rearrested does not change that status. Habeas corpus lies where persons are held in custody illegally.

In Board of Prison Com'rs v. Crumbaugh, Police Judge, 161 Ky. 540, 170 S. W. 1187, 1188, it was said:

"A prisoner, who has been paroled by the board, remains subject to its control, and, if he violates the parole, may be rearrested and placed again in prison. While at liberty under the parole, he is subject to the control of the board as he was before the parole was granted. George v. Lillard, 106 Ky. (820) 824, 51 S. W. 793, 1011, 21 Ky. Law Rep. 483; Board of Prison Commissioners v. De Moss, 157 Ky. 289, 163 S. W. 183.

"The prisoner who has been paroled and has subsequently been rearrested under a warrant by the board is not illegally detained in custody. The writ of habeas corpus may be used to release from custody persons who are held in custody illegally; but, under this summary process, the officer issuing it in the case of a paroled convict, rearrested upon the order of the board, cannot go behind the order of the board, for the board has authority by law to issue the warrant, and the detention of persons under the warrant is not without authority of law."

It is also pointed out in the case above that in the event the board should abuse its authority in rearresting a convict, the remedy is not by writ of habeas corpus but by a proceeding in the circuit court in the proper county to obtain a writ of mandamus requiring the board to proceed properly.

Wherefore, we conclude the court below properly denied the writ. That ruling is hereby affirmed.