Mikail Sajjaad **MUHAMMAD,**
Appellant

v.

**KENTUCKY PAROLE BOARD, Appellee**

2013–SC–000420–DG

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Counsel for Appellant: Aaron Reed Baker, Assistant Public Advocate, Department of Public Advocacy.

Counsel for Appellee: John C. Cummings, Justice and Public Safety Cabinet, Office of Legal Services.

## OPINION OF THE COURT BY
## JUSTICE ABRAMSON

Guilty pleas have become the means by which the vast majority of criminal prosecutions are resolved.[1] The guilty plea process and the validity of the judgments resulting from that process are therefore matters of substantial public importance. This case, in which Mikail Sajjaad Muhammad contends that a plea bargain gone awry entitled him to habeas corpus relief, raises questions of sufficient moment concerning the avenues available for pursuing plea-bargain breach claims to justify our attention—notwithstanding the fact that the expiration of Muhammad's sentence has rendered his own case moot. The Oldham Circuit Court initially granted Muhammad's petition for habeas corpus relief, but upon intervention and appeal by the Kentucky Parole Board, as a real party in interest, the Court of Appeals reversed. That Court, while not ruling out the possibility that Muhammad might be, or might have been, entitled to some other form of relief, held that habeas corpus was not an appropriate remedy in the circumstances. That ruling prompted Muhammad's motion for discretionary review. Our reasoning differs somewhat from that of the Court of Appeals, but we agree with that Court's bottom line: Muhammad failed to establish the inadequacy of more usual forms of relief, and thus his resort to habeas corpus should have been denied. This conclusion has no practical effect for Muhammad, due to the mootness of his claim, but our Opinion will provide needed guidance as to the proper mode[s] of challenging an unfulfilled plea bargain.

### RELEVANT FACTS

The controversy arose from Muhammad's October 2011 guilty plea in Fayette Circuit Court to one felony count of receiving stolen property (RSP), as delineated by Kentucky Revised Statute (KRS) 514.110(3)(a) (value of property between $500.00 and $10,000.00, making the offense a Class–D felony). In exchange for Muhammad's Alford[2] plea waiving his trial rights and conceding evidence suggestive of his guilt, the Commonwealth agreed to dismiss a first-degree persistent felony offender (PFO) count, to recommend a sentence of three years, and not to seek revocation of the five-year conditional discharge Muhammad was then serving for a 2008 sex-offense conviction. The prosecutor's last promise, that the guilty plea and resulting RSP conviction would not result in the revocation of Muhammad's conditional discharge, proved to be problematic. To see why requires an understanding of KRS 532.043, formerly the "conditional discharge" statute and

1. As the United States Supreme Court has recently observed, in both federal and state courts, guilty pleas account for more than 90% of criminal convictions. *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) (quoting the comment by Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract,* 101 Yale L.J. 1909, 1912 (1992), that "plea bargaining 'is not some adjunct to the criminal justice system, it is the criminal justice system.'"):

2. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

now the "post-incarceration supervision" statute.

In pertinent part, KRS 532.043 currently provides that persons convicted of or pleading guilty to a felony offense under KRS Chapter 510 (Sexual Offenses) shall be subject, upon completion of their regular sentences, to an additional period of parole-board supervision. In November 2007, when Muhammad pled guilty to one count of first-degree sexual abuse—a KRS Chapter 510 felony (KRS 510.110)—the statute referred to the additional period of supervision as "conditional discharge" and provided that the "period of conditional discharge shall be five (5) years." KRS 532.043(2) (2007).[3] At that time the statute also provided that

> (3) During the period of conditional discharge, the defendant shall: (a) Be subject to all orders specified by the Department of Corrections ...
>
> (4) Persons under conditional discharge ... shall be subject to the supervision of the Division of Probation and Parole[,] [and]
>
> (5) If a person violates a provision specified in subsection (3) of this section, the violation shall be reported in writing to the Commonwealth's attorney in the county of conviction. The Commonwealth's attorney may petition the court to revoke the defendant's conditional discharge and reincarcerate the defendant as set forth in KRS 532.060.

KRS 532.043 (2007).

According to records of the Division of Probation and Parole, Muhammad completed his two-year sentence for first-degree sex abuse and began serving his five-year period of sex-offender conditional discharge on May 17, 2009. He was still serving that part of his sentence in October 2011 when he pled guilty to RSP. As just noted, under the 2007 version of KRS 532.043, whether to seek revocation of Muhammad's conditional discharge as a result of his new conviction was a matter of prosecutorial discretion, and thus, under that version of the statute, there is not much question that the prosecutor could have legitimately offered non-revocation as part of the consideration for Muhammad's guilty plea.

As it happened, however, in *Jones v. Commonwealth,* 319 S.W.3d 295 (Ky.2010), a case rendered in April 2010, this Court held that KRS 532.043 ran afoul of the separation of powers doctrine to the extent that it made the judicial branch responsible for conditional discharge revocation proceedings, proceedings properly the responsibility of the executive branch. "Once a prisoner is turned over to the Department of Corrections for execution of the sentence," the Court explained, "the power to determine the period of incarceration passes to the executive branch." 319 S.W.3d at 300. Consistent with the separation of powers doctrine, then, the General Assembly can "create a form of conditional release [such as KRS 532.043's "conditional discharge"] with terms and supervision by the executive branch," 319 S.W.3d at 299, but it cannot derogate from that executive authority by involving the judicial branch directly in the exercise of administrative action. "Only on appeal of an administrative action," the Court observed, "should the judicial branch become involved." 319 S.W.3d at 300.

---

**3.** Muhammad was charged with sex offenses in August 2007. The record before us does not indicate when the offenses were alleged to have been committed, but the record does not suggest and no one has claimed that they were committed prior to August 12, 2006, when the KRS 532.043 was amended to increase the discharge period from three years to five. He pled guilty in 2007 and was sentenced in early 2008.

The General Assembly was quick to respond. At its next session it enacted House Bill 463 (effective March 3, 2011) which, among many other things, amended KRS 532.043 by changing the phrase "conditional discharge" to "postincarceration supervision;" by making clear that persons on postincarceration supervision are under the authority of the Parole Board; and by assigning responsibility for revocation proceedings to parole authorities:

> (5) If a person violates a provision specified in subsection (3) of this section, the violation shall be reported in writing by the Division of Probation and Parole. Notice of the violation shall be sent to the Parole Board to determine whether probable cause exists to revoke the defendant's postincarceration supervision and reincarcerate the defendant as set forth in KRS 532.060.

KRS 532.043(5) (2011). At the time of Muhammad's October 2011 guilty plea, therefore, revocation of a sex offender's "postincarceration supervision" was no longer a matter of prosecutorial discretion, but, like the revocation of other forms of parole, a matter entrusted to parole authorities and ultimately to the Parole Board.

Nevertheless, in exchange for Muhammad's guilty plea, the prosecutor promised not to pursue revocation of Muhammad's "conditional discharge." Both the trial court and defense counsel signed off on that agreement, with everyone, including particularly Muhammad, apparently understanding that despite the new RSP conviction, Muhammad's conditional discharge from his 2008 sex offense would not be revoked.[4]

To Muhammad's surprise, however, on the day (October 18, 2011) the trial court's Judgment convicting Muhammad of RSP and sentencing him to three years in prison was entered, a parole officer commenced revocation proceedings by filing a Notice of Preliminary Hearing. Following the preliminary hearing on November 14, 2011, an administrative law judge ruled that, notwithstanding Muhammad's plea bargain, his new conviction provided probable cause for the revocation of his discharge. The ALJ therefore referred the matter to the Parole Board for a final

---

**4.** What the parties understood with respect to the plea agreement is not entirely free of ambiguity, and because the habeas court (the Oldham Circuit Court) appropriately did not conduct a full evidentiary hearing, that ambiguity was never fully addressed. The prosecutor, in particular, did not testify or supply an affidavit. According to Muhammad, he initially accepted an RSP plea bargain for an eight-year PFO–2d sentence (that sentence bartered, apparently, for the reduction of the PFO count from first-degree to second). When a parole officer advised him, however, that the new conviction would subject him to the revocation of his sex-offender conditional discharge, Muhammad successfully moved to withdraw from that initial plea bargain. At that point, Muhammad was assigned new counsel, and it was she who negotiated the deal for a three-year RSP sentence and the dismissal of the PFO count. The prosecutor's willingness to reduce an eight-year sentence to a three-year sentence is consistent, at least, with an expectation that Muhammad would be serving another five years or so on the revoked conditional discharge. The prosecutor's agreement not to seek revocation may reflect, then, not a prosecutorial promise of non-revocation, as Muhammad maintains, but merely a prosecutorial promise to leave revocation to the Parole Board even if under the new statute the prosecutor still had some say in the matter. Of course, the prosecutor may also have been totally unaware of *Jones* and the H.B. 463 changes to KRS 532.043. The Oldham Circuit Court apparently understood the plea bargain as promising non-revocation, however, and since even under that interpretation Muhammad is not entitled to habeas relief, the agreement's ambiguity need not be resolved. We may assume for the purposes of this Opinion, therefore, that Muhammad's account of the agreement is accurate.

hearing. At that point (December 1, 2011), Muhammad was returned to custody with respect to the sex offense. (He was already in custody, it appears, with respect to the RSP offense.) He was interviewed by the Parole Board on March 22, 2012. The Board agreed with the administrative law judge that Muhammad's new felony conviction provided grounds for the revocation of his sex-offender conditional discharge/postincarceration supervision, and it ordered Muhammad to serve out the discharge period, which was due to expire on May 17, 2014.

There the matter stood, apparently, until August 7, 2012, when Muhammad filed in the trial court a *pro se* motion under Kentucky Rule of Criminal Procedure (RCr) 11.42 for relief from the October 2011 Judgment. He alleged that defense counsel had rendered ineffective assistance when she advised him to plead guilty in reliance on a promise—the promise that Muhammad's conditional discharge would not be revoked—that the prosecutor was not authorized to make. He attached to his motion a letter from defense counsel to the effect that she had indeed misadvised him in that regard. Muhammad's motion

also alleged, and the Parole Board does not dispute this claim, that in May 2012 Muhammad served out his three-year sentence for receiving stolen property.[5] That left the revoked sex-offender conditional discharge as the only basis for Muhammad's continued incarceration.

Counsel was appointed to assist Muhammad with his RCr 11.42 motion, and when counsel saw that RCr 11.42 arguably did not apply,[6] and that Muhammad's incarceration was arguably illegal—the result of a broken plea bargain—counsel abandoned the RCr 11.42 proceeding in the trial court (Fayette Circuit Court) and moved in the Oldham Circuit Court for a writ of habeas corpus.[7] That court granted Muhammad's petition and, by Order entered November 30, 2012, directed the Department of Corrections forthwith to release Muhammad from custody.[8]

The Parole Board, as the real party in interest, appealed the Oldham Circuit Court's Order to the Court of Appeals. A panel of that Court unanimously reversed. In the panel's view, Muhammad's resort to a habeas proceeding was improper for at least a couple of reasons. First, according

---

5. The record indicates that when he was sentenced on the RSP offense Muhammad was given credit for 500 days of pre-judgment incarceration. Those days together with good-time credits could well account for the expiration of a three-year sentence some seven months after its imposition. The record does not appear to include the pertinent Corrections Department documents, however, nor does it indicate the relationship between Muhammad's receiving-stolen-property sentence and his sex-offender conditional discharge. Although the Judgment provides that the sentence in the RSP case was to be served consecutively "with any other previous felony sentence the Defendant must serve," the RSP sentence appears to have been deemed concurrent with the conditional discharge.

6. RCr 11.42 offers relief from a judgment while the sentence is in effect. As noted, Mu-

hammad's sentence for receiving stolen property had expired in May 2012.

7. Habeas petitions may be brought in any circuit court, KRS 419.020, but they are referred to "the Circuit Judge of the county in which the person is being detained." KRS 419.030; *Ringo v. Pound,* 436 S.W.2d 264 (Ky.1969). Muhammad was detained at the Roederer Correctional Complex in Oldham County.

8. Muhammad sought only a return to conditional discharge, not an unconditional release from custody, and subsequent Orders by the Oldham Circuit Court make clear that Muhammad was "released" from custody only in the sense that he was returned from prison to parole supervision.

to the panel, habeas relief is available only from judgments which are, on their face, "void," in the sense, apparently, of beyond the issuing tribunal's authority. Parole revocations generally, however, and, under the revised KRS 532.043(5), sex-offender conditional discharge revocations in particular, are within the Parole Board's authority. The Board's order in this case, therefore, cannot be said to be "void" for habeas purposes, or to have rendered the trial court's Judgment void, and thus was not subject to habeas relief. Habeas corpus, moreover, according to the appeals panel, does not serve as an alternative to other forms of relief, but is available only when no other remedy is adequate. In the panel's view Muhammad had an adequate remedy in the trial court via RCr 11.42, and so again the Oldham Circuit Court should have kept the habeas gate closed. We accepted Muhammad's motion for discretionary review out of concern that the Court of Appeals may have applied an overly formalistic notion of habeas corpus and in so doing may have dealt too lightly with the problem of a guilty plea that turns out to have been induced by an unfulfilled prosecutorial promise. Having had an opportunity to examine the record, having had the benefit of the parties' briefs on the thorny legal questions that crop up in this area, and having considered the United States Supreme Court's more recent Opinions concerning the effect of plea breaches on guilty pleas, we are convinced that the Court of Appeals made the right call.

### ANALYSIS

### I. Mootness Does Not Render This Case Unreviewable.

 Our analysis must begin with the Parole Board's insistence that the case is now moot and should be dismissed. As the Board points out, Muhammad's period of sex-offender postincarceration supervision came to an end in May 2014, and thus at this point regardless of our ruling on review of the Court of Appeals' decision, we can provide Muhammad no substantive relief. The general rule, of course, is that " 'where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed.' " *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky.2014) (quoting *Louisville Transit Co. v. Dep't of Motor Transp.*, 286 S.W.2d 536, 538 (Ky. 1956)). There are exceptions to this rule, however, and in *Morgan* we recently recognized the Court's discretion, under what we referred to as the "public interest exception," to consider an otherwise moot case "when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." 441 S.W.3d at 102.

We are persuaded that this case, as did *Morgan*, raises well-litigated issues of sufficient public importance to warrant our review pursuant to the public interest exception, notwithstanding mootness. Guilty pleas, as we noted at the outset, and the plea bargaining that typically precedes them, dominate criminal adjudications and are matters of the utmost public importance. This case raises significant questions about the effect of plea breaches and the avenues open for remedying them. Answers to even some of those questions would provide valuable guidance to prosecutors, courts, and defense counsel alike as they all attempt to ensure that the efficiencies made possible by guilty pleas comport with defendants' constitutional rights. To the extent, moreover, that a large percentage of guilty pleas lead to relatively short

sentences and relatively short periods of parole, and to the extent that, as in this case, issues concerning the validity of a new plea can hinge on prior parole periods to a large extent already served, the questions presented here are capable of arising again and of again evading review by becoming moot.[9] We elect, therefore, to deny the Parole Board's motion to dismiss and instead will address Muhammad's claims despite the fact that after discretionary review was granted but before the case could be argued Muhammad's period of postincarceration supervision came to an end and mooted his case.

## II. Habeas Corpus Was Not An Appropriate Remedy For The Plea–Bargain Breach Alleged In This Case.

### A. Unfulfilled Plea Bargains Generally.

Turning then to the merits of Muhammad's appeal, we are confronted, seemingly, with the difficult question of how to remedy the Commonwealth's breach of an "unfulfillable" plea bargain. First, we note that a prosecutor's promise can be "unfulfillable" for a couple of reasons.

The benefit promised can simply be illegal, as when, for example, the prosecutor promises to recommend concurrent sentences when the law requires that the sentences be consecutive, or promises a sentence outside the range established by the sentencing statutes. The promise can also be "unfulfillable" because the promised benefit, although legal, is one the grant of which is ordinarily entrusted to the discretion of an official other than the prosecutor, such as a licensing authority or officials in a different jurisdiction.[10]

■ Suffice it to say, that at least since the United States Supreme Court declared in *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that "[w]hen a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. 495, courts, both federal and state, have struggled to determine how best to "fulfill" the "unfulfillable."[11] At one extreme, the U.S. Court of Appeals for the Eighth Circuit held in *Margalli–Olvera v. Immigra-*

9. In that vein, our 2010 *Jones* ruling involved consolidated cases raising the issue of the constitutionality of the conditional discharge statute. We noted that both defendants had served out their period of reincarceration following the revocation of their conditional discharge, and thus the issue was moot as to them. 319 S.W.3d at 296. Nevertheless, the issue was sufficiently important and capable of repetition to merit our review. *Id.* at 296–97.

10. *See generally* Stuart L. Gasner, *Specific Performance of "Unfulfillable" Plea Bargains*, 14 U. Mich. J.L. Reform 105 (1980–1981) (discussing plea bargains in which "a prosecutor promises a defendant some benefit which the prosecutor lacks authority to provide"); Peter Westen & David Westen, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal. L.Rev. 471 (1978) (exploring

whether the federal constitution could be thought to require a particular type of remedy in broken-plea cases).

11. *See* Michael D. Cicchini, *Broken Government Promises: A Contract–Based Approach to Enforcing Plea Bargains*, 38 N.M. L. Rev. 159 (2008) (surveying a number of state cases and arguing that *Santobello* has not provided defendants adequate protection); Jonathan D. Duffey, *Plea Agreements: When Agents of the Government Lack the Requisite Authority, But Make Deals With Defendants Anyway*, 66 U. Cin. L. Rev. 233 (1997) (discussing the split the "unfulfillable promise" problem has generated among the federal Circuit Courts); Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procedure* §§ 21.2(d) and (e) (3rd ed.2007) (discussing and collecting cases concerning broken plea bargains and remedies therefor).

*tion and Naturalization Service*, 43 F.3d 345 (8th Cir.1994), that United States Attorneys have, implicit in their authority to prosecute on behalf of the United States, actual authority to bind the United States and its agencies, including the Immigration and Naturalization Service, to plea agreements. At the other extreme, the Eleventh Circuit held in *San Pedro v. United States*, 79 F.3d 1065 (11th Cir. 1996), that the general power of United States Attorneys to prosecute does not override the specific statutory grants of authority to other governmental offices and agencies, so that a broken prosecutorial promise purporting to usurp the discretion of some other agency might be grounds for rescinding a guilty plea, but it does not give rise to a right to specific performance, even if recission has become meaningless because the defendant has already served his or her sentence. These are essentially the approaches adopted respectively by Muhammad and the Parole Board in this case, and with slight variations are the approaches adopted by a number of other courts.[12] Neither approach is entirely satisfactory, since one enables prosecutors to usurp the discretion of other public officials at will, whereas the other enables prosecutors to induce guilty pleas with promises not apt to be enforced.

■■■ This moot case does not oblige us to weigh in on this conundrum, but it does offer us an opportunity to observe that if ever an ounce of prevention is worth a pound of cure it is in the making and taking of guilty pleas. Everyone involved in the process, the court, all counsel, and the defendant, has an interest in ensuring not only that the defendant understands what he (or she) is giving up, but also that he is making his concessions in exchange for prosecutorial promises firmly grounded in the law and in the prosecutor's own authority. Doubtful deals should be scrutinized carefully and breaches should be brought to the court's attention as soon as they are perceived. In short, unfulfillable plea bargains should be avoided but, at a minimum, identified promptly and dealt with in the trial court.

**B. Avenues of Relief for Plea Bargain Breaches.**

That said, fortunately, the large question regarding unfulfilled promises is re-

12. In the *Margalli–Olvera* camp (more-or-less), *see, e.g., United States v. Jureidini*, 846 F.2d 964 (4th Cir.1988) (holding that while agreement purporting to bind parole commission was improvident, *Santobello* requires that breach be remedied in a meaningful way); *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2nd Cir.1976) (holding that under *Santobello* unauthorized prosecutorial promise of parole for prior offense entitled to specific performance); *Buckley v. Terhune*, 441 F.3d 688 (9th Cir.2006) (holding that under *Santobello* defendant was entitled to specific performance of plea agreement calling for illegally short sentence). On the other side, *see, United States v. Rourke*, 74 F.3d 802 (7th Cir.1996) (rejecting contention that United States Attorney could bind Federal Aviation Administration not to revoke a pilot's license); *United States v. Igbonwa*, 120 F.3d 437 (3rd Cir.1997) (holding that United States Attorney could not bind Immigration and Naturalization Service without express authorization from that agency); *Rise v. Board of Parole*, 304 Or. 385, 745 P.2d 1210 (1987) (holding in a parole-denial review proceeding that prosecutor's promise of parole did not bind parole board, but noting that *Santobello* might require some form of relief in a different type of proceeding); *Craig v. People*, 986 P.2d 951 (Colo.1999) (holding that plea agreement calling for an illegal sentence invalidated the guilty plea and could not be specifically enforced); *Chaipis v. State Liquor Authority*, 44 N.Y.2d 57, 404 N.Y.S.2d 76, 375 N.E.2d 32 (1978) (holding that prosecutor's promise that liquor license would not be revoked was not binding on the State licensing authority, but remanding to that authority for written statement of reasons if it declined to honor the promise).

duced in this case to the more particular one of whether a writ of habeas corpus was an appropriate avenue of remedy for the breach that Muhammad alleged. The Oldham Circuit Court thought Muhammad's entitlement to relief clear enough from the record to justify invoking habeas corpus, whereas the Court of Appeals thought habeas inappropriate because the error Muhammad alleged—the Parole Board's revocation of his postincarceration supervision in the face of the prosecutor's promise that there would be no revocation—did not render Muhammad's conviction or sentence void. Additionally, as the Court of Appeals saw it, Muhammad could (and so should) have sought vindication of his plea bargain in an RCr 11.42 action in the court that had accepted the plea.

These diverse interpretations of the situation reflect the important concerns involved. On the one hand is this Court's (and the circuit court's) profound concern that a prosecutor's plea-bargain promise, even an ill-advised one, implicates the state's integrity, as well as the defendant's rights. The breaking of that promise compromises the Commonwealth's integrity in a manner that echoes far beyond the confines of a specific prosecution. Thus in *Commonwealth v. Reyes*, 764 S.W.2d 62, 65–66 (Ky.1989), a murder case involving Reyes and a co-defendant, this Court upheld the trial court's decision to hold the prosecutor to his promise not to seek the death penalty against Reyes, who performed his part of the bargain, even after newly developed ballistics evidence established, contrary to the prosecutor's initial theory, that Reyes and not the co-defendant was the murderer. *Reyes* relied in large part on this Court's seminal opinion in *Workman v. Commonwealth*, 580 S.W.2d 206 (Ky.1979) (*overruled on other grounds by Morton v. Commonwealth*, 817 S.W.2d 218 (Ky.1991)). In that case, the trial court denied the defendant's motion to enforce the prosecutor's promise to dismiss a murder indictment if the defendant took and passed a lie detector test. The defendant passed two such tests, but the prosecutor reneged, and following trial the defendant was convicted. Reversing the conviction and ordering that the indictment be dismissed in accord with the prosecutor's promise, this Court explained,

> The question is not whether the Commonwealth's bargain was wise or foolish. The question is whether the Commonwealth should be permitted to break its word.... If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy.

580 S.W.2d at 207.

■ On the other hand are the equally important concerns (reflected in the Court of Appeals' ruling) that criminal judgments be subject to an orderly system of challenge and review, *Gross v. Commonwealth*, 648 S.W.2d 853 (Ky.1983) (discussing the opportunities for review provided by direct appeal, RCr 11.42, and Civil Rule 60.02), and that habeas corpus not be haphazardly invoked so as to frustrate that system. Its use, as a post-judgment remedy, is thus generally reserved for cases in which a prisoner can "establish in a summary procedure that the judgment by which he is detained is void *ab initio*." *Commonwealth v. Marcum*, 873 S.W.2d 207, 212 (Ky.1994). *See also*, John S. Gillig, *Kentucky Post–Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42*, 83 Ky. L.J. 265 (1994–95) (discussing habeas corpus in the context of Kentucky's more typical post-conviction remedies). Plea bargain breaches have forced other courts to wrestle with similar concerns, including the

Supreme Court of the United States, whose fairly recent application of plain error analysis (the federal counterpart of Kentucky's palpable error analysis) to such a breach bears significantly on the analysis in this case.

▪ The Supreme Court, of course, long ago endorsed plea bargaining as "an essential component of the administration of justice." *Santobello v. New York,* 404 U.S. at 260, 92 S.Ct. 495. "Properly administered," the Court noted, that essential component of the criminal justice system not only eases the strain criminal proceedings place on government resources, but it is also desirable as

> lead[ing] to prompt and largely final disposition of most criminal cases, ... avoid[ing] much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial, ... protect[ing] the public from those accused persons who are prone to continue criminal conduct even while on pretrial release, and, by shortening the time between charge and disposition, ... enhance[ing] whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

404 U.S. at 260–61, 92 S.Ct. 495. All of the benefits derived from plea bargaining, however, are contingent on there being "fairness in securing agreement between an accused and a prosecutor." *Id.* Accordingly,

> [t]his phase [the plea-bargaining phase] of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.*

404 U.S. at 262, 92 S.Ct. 495 (emphasis supplied).

*Santobello* involved the breach of the prosecutor's promise to abstain from recommending a sentence. When instead the prosecutor recommended the maximum sentence, defense counsel promptly objected on the basis of the plea agreement and moved for a continuance. Denying the motion, the trial judge assured counsel that the prosecutor's recommendation had no bearing on his sentencing decision, which was based instead on a pre-sentence report replete with a "long serious criminal record." 404 U.S. at 259, 92 S.Ct. 495.

Notwithstanding this suggestion that the prosecutor's breach was likely harmless, the Supreme Court concluded

> that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

404 U.S. at 262–63, 92 S.Ct. 495. Thus, although the Court vacated the judgment without regard to harmlessness, by permitting the plea to stand if in the state court's judgment that is what the circum-

stances called for, it did not go as far as Justice Marshall's Opinion (concurring in part and dissenting in part), which expressed the view that "[w]hen a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." 404 U.S. at 268, 92 S.Ct. 495.

This idea that a prosecutor's breach of a plea bargain invalidates the guilty plea also appeared as dictum in *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), where the Court stated that "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." 467 U.S. at 509, 104 S.Ct. 2543. It may well be that the Oldham Circuit Court had this precedent in mind— that Muhammad's guilty plea would be rendered void if the prosecutor's non-revocation promise could not be enforced— when it determined that Muhammad was entitled to habeas corpus relief. More recent precedent suggests otherwise.

█ In *Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) the Supreme Court held that Fed. R. Civ. Pro. 52(b)—the plain error rule— applies to forfeited (unpreserved) claims that the Government breached a plea bargain. In the course of so holding, the Court expressly disavowed the suggestion in *Mabry* that a plea breach retroactively renders the guilty plea either unknowing or involuntary. 556 U.S. at 138, n.1, 129 S.Ct. 1423. Rather, Government failures to abide by plea bargains are, like almost all other trial errors,[13] subject to the ordinary rules of preservation by contemporaneous objection and, in the event of forfeiture (lack of preservation), are subject to limited review for "plain error" ("palpable error" in the terms of our RCr 10.26).

█ Contemporaneous objection is as important in this context as in any other, the *Puckett* Court explained, not only to prevent savvy defendants from sandbagging the trial court by withholding objection until the proceedings turn sour; but also to give opposing parties and the trial court an opportunity to address on the record whether an alleged breach has occurred; to allow for the breach to be cured if possible; or, if cure is not possible, to enable the trial court to select a remedy while the array of possible remedies is still at its fullest. 556 U.S. at 140, 129 S.Ct. 1423. Nor, the Court insisted, is plain error review meaningless. While plea breaches do indeed violate a defendant's rights, not all breaches will be plain; not all plain breaches will be prejudicial; and not all plain, prejudicial breaches will, in the terms of our Kentucky rule, result in "manifest injustice." 556 U.S. at 141–42, 129 S.Ct. 1423.

█ To be sure, as the U.S. Supreme Court acknowledged, any slight on the Government's integrity is a serious matter, and a plea breach is particularly serious because of its tendency to undermine trust between prosecutors and defendants, the trust upon which the whole plea-bargaining system depends. Indeed, under *Santobello*, a *properly preserved* plea breach is subject to automatic reversal,[14] a holding that

---

**13.** The Court held expressly that plea breaches are not structural errors. 556 U.S. at 141, 129 S.Ct. 1423.

**14.** The *Puckett* Court queried, but did not address, "whether *Santobello's* automatic reversal rule has survived our recent elabora-

tion of harmless-error principles in such cases as [*Arizona v.*] *Fulminante* [, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ] and *Neder* [*v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ]." 556 U.S. at 141 n.3, 129 S.Ct. 1423.

rested not upon the premise that plea-breach errors are (like "structural" errors) somehow not *susceptible,* or not *amenable,* to review for harmlessness, but rather upon a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an "essential" and "highly desirable" part of the criminal process. *Puckett,* 556 U.S. at 141, 129 S.Ct. 1423 (quoting *Santobello,* 404 U.S. at 261–62, 92 S.Ct. 495). No less essential and desirable, however, according to the Court, is the rule of contemporaneous objection, so that "when the two collide we see no need to relieve the defendant of his usual burden of showing prejudice." *Id.* We agree.

**C. Avenues of Relief Specifically Available to Muhammad.**

■ Applying a *Puckett*-like analysis, we are compelled to consider more closely than the parties or the lower courts have done whether Muhammad preserved his claim of plea breach, and if not what effect his forfeiture has upon his entitlement to relief. Plainly, Muhammad's claim was not properly preserved. Under our rule of contemporaneous objection—RCr 9.22—Muhammad was required to object to the plea-breach error as soon as he had grounds to believe that the prosecutor's promise was not being fulfilled. *Cf. West v. Commonwealth,* 780 S.W.2d 600, 602 (Ky.1989) ("RCr 9.22 imposes upon a party the duty to make 'known to the court the action he desires the court to take or his objection to the action of the court.' . . . If a party claims entitlement to [relief], he must timely ask the court to grant him such relief."); *Winstead v. Commonwealth,* 283 S.W.3d 678, 688 (Ky.2009) ("KRE 103 and RCr 9.22 require that objections . . . be both timely and specific. As Professor Lawson notes, the general rule is that an objection is not timely un-

less it is made 'as soon as the basis for objection becomes apparent.'.") (*quoting* Lawson, *The Kentucky Evidence Law Handbook,* p. 36 (4th ed. 2003)).

Muhammad had grounds for concern on October 18, 2011, the day final judgment in the RSP case was pronounced and sentence imposed. That same day, Probation and Parole Officer Elizabeth Russell served on Muhammad (whose signature appears on the document in acknowledgement of receipt) a Notice of Preliminary Hearing to the effect that the RSP conviction warranted revocation of Muhammad's sex-offender conditional discharge. The notice is a clear breach of the prosecutor's promise that revocation would not be sought, and at that point the trial court still had jurisdiction of the case and could have entertained a motion by Muhammad to withdraw the plea or (perhaps) to compel the prosecutor to establish his authority to uphold the non-revocation promise he had made. *Commonwealth v. Steadman,* 411 S.W.3d 717, 721 (Ky.2013) (citing *Commonwealth v. Marcum, supra* as illustrating the rule that "a trial court loses jurisdiction of a case ten days after entry of a final order or judgment"). In any event, Muhammad was on notice of a breach of the plea agreement, and, if he wished to preserve the issue, the onus was on him promptly to object and to give the trial court an opportunity to address it. If the trial court's resolution left Muhammad dissatisfied, he could then have sought relief by way of appeal.

Furthermore, as the Court of Appeals noted, between the expiration of his right to appeal, apparently in November 2011, and the completion of his RSP sentence, in May 2012, Muhammad was under sentence for about six months. During that time, RCr 11.42 provided him with a procedure for challenging the effectiveness of counsel's plea advice. *See Fraser v. Common-*

*wealth,* 59 S.W.3d 448 (Ky.2001) (holding that defendant's allegations of incompetent counsel regarding a guilty plea sufficed to entitle him to an RCr 11.42 evidentiary hearing concerning the voluntariness of the plea); and *cf. Missouri v. Frye, supra,* and *Lafler v. Cooper,* — U.S. —, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) (both holding that a defendant is entitled to the effective assistance of counsel during plea bargaining).

▮ Muhammad was also on early notice of a potential disagreement with the Parole Board over its authority to revoke his conditional discharge notwithstanding his plea bargain. He might thus have sought, rather than or in addition to enforcement of the plea bargain, to preclude the revocation upon receiving notice of the proceeding in October 2011. Our law has long provided that a mandamus action against the Parole Board (but not an action for habeas corpus)[15] will lie to challenge a parole revocation. *Shepherd v. Wingo,* 471 S.W.2d 718 (Ky.1971); *Mahan v. Buchanan,* 310 Ky. 832, 221 S.W.2d 945 (1949) (citing *Board of Prison Com'rs v. Crumbaugh,* 161 Ky. 540, 170 S.W. 1187 (1914)).

▮ Muhammad thus had numerous opportunities between October 2011 and May 2012 to seek by other means the relief he sought by way of habeas corpus in November 2012. The general rule, as noted by the Court of Appeals, is that habeas corpus may not be invoked merely as a substitute for what are or were other available remedies. *M.M. v. Williams,* 113 S.W.3d 82, 85 (Ky.2003) (citing *Lear v.*

*Commonwealth,* 884 S.W.2d 657 (Ky. 1994)).

On the other hand, of course, habeas corpus is not merely a court-created procedure, but is a fundamental right against unlawful detention secured by Section 16 of our Kentucky Constitution and implemented by KRS Chapter 419. That Chapter creates an expedited procedure whereby "anyone showing by affidavit probable cause that he is being detained without lawful authority," KRS 419.020, may be brought before a circuit court for a hearing, "summary in nature," KRS 419.110, on the merits of the claim.

▮ Because it is constitutionally based, habeas corpus cannot simply be supplanted by the rule and statute-based system that has evolved in Kentucky for the review of criminal judgments. *Commonwealth v. Marcum,* 873 S.W.2d at 210. As noted above, in *Marcum* the Court attempted to articulate the balance that obtains between a prisoner's right to expeditious release through habeas corpus when the unlawful detention is "patently obvious" and the Commonwealth's need for an orderly system of post-conviction review. *Id.* The Court explained that habeas may be invoked for judgment-review purposes whenever the alternative is inadequate, but that generally the alternative will not be deemed inadequate and may be insisted upon unless the prisoner "can establish in a summary procedure that the judgment by which he is detained is void *ab initio.*" 873 S.W.2d at 212.

*Marcum* is a classic example of the proper use of habeas corpus because the

---

**15.** The distinction makes sense, because in a revocation action the movant, like Muhammad here, is not seeking a release from custody—the remedy habeas corpus famously provides—but the exchange of one form of custody for another. *See Fryrear v. Parker,* 920 S.W.2d 519, 521 (Ky.1996) (citing *Wal-*

*ters v. Smith,* 599 S.W.2d 164 (Ky.1980), for the proposition that "the status of parole is as much a state of 'being detained,' as is being confined to prison."). While one can quibble easily with the proposition that incarceration and parole are somehow equivalent, both involve the state's control of the defendant.

judgment under which the defendant was held could be deemed indisputably void by simple reference to the record. The trial court first sentenced Marcum to two years, enhanced to five years in prison, on February 1, 1988. Almost eight weeks later, without notice to Marcum or his counsel, the trial court entered an amended judgment imposing a five-year sentence enhanced to ten years because of Marcum's PFO status. This Court found it "irrefutable" that the trial court lost jurisdiction over the case ten days after the original judgment and was without power to enter the amended judgment under which Marcum remained detained. *Id.* at 211. Habeas corpus was the "appropriate remedy." *Id.* at 212.

Muhammad's situation is manifestly different. *Puckett,* which we find persuasive, lays to rest any claim by Muhammad that his guilty plea was rendered automatically void when his plea bargain was not specifically enforced. Unlike *Marcum,* Muhammad's is not a scenario where the judgment is clearly void *ab initio.* Instead, Muhammad should have availed himself of either a direct appeal or a motion under RCr 11.42, both of which provided adequate opportunity to seek relief for the prosecutor's alleged breach of the plea bargain promise regarding revocation of "conditional discharge." *Puckett* likewise forecloses any claim that the Parole Board lacked authority to revoke Muhammad's postincarceration supervision,[16] and certainly nothing in *Marcum* suggests a departure from the rule that mandamus, not habeas, is the correct procedure for challenging a parole revocation.

Of course it may be that *Marcum* does not represent the exclusive habeas exception to our ordinary post-conviction review procedures, and perhaps *Marcum's* void-*ab-initio* rule does not exhaust habeas's appropriateness for post-conviction review purposes. One might claim that a prosecutor's breach of a plea bargain is another circumstance justifying habeas relief. Certainly, in both *Reyes* and *Workman* this Court condemned plea breaches in forceful terms:

> It makes no difference how wise or foolish the [plea] contract might have been; it matters not that the agreement, as here, may offend one's sense of justice; it is of no moment that the choice is hard, or that a defendant whose infamous crime merits execution may have his life spared. The state's integrity is at stake. It is less evil that Reyes may escape execution than that the state's integrity be compromised.

*Reyes,* 764 S.W.2d at 66. And, to reiterate

> If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy.

*Workman,* 580 S.W.2d at 207. Are plea breaches so repugnant to our law that a judgment resting on one should, like a judgment void *ab initio,* be subject to habeas corpus notwithstanding the petitioner's failure to make use of the available alternative remedies? To the extent that Muhammad suggests that interpretation,

---

**16.** One might claim that the Parole Board's revocation authority under KRS 532.043(5) does not extend to reliance upon void guilty pleas. *Cf. Brown v. Poole,* 337 F.3d 1155 (9th Cir.2003) (countering an argument that a prosecutor's promise of parole could not be specifically enforced because "only the Board of Prisons has the authority to reduce a sentence" by noting the constitutional consideration that "the Board's discretion ... appl[ies] only to those who are legitimately imprisoned," but if the prosecutor's promise were not enforceable the imprisonment would not be legitimate).

indeed extension of *Workman* and *Reyes,* we reject it.

*Workman* and *Reyes* were not habeas cases. In both, the prosecutor's breach was timely raised and addressed in the trial court, and thus was subject to direct review by this Court on appeal. However forcefully this Court deplored the serious prosecutorial errors in those cases, they are not precedent for the proposition that *unpreserved* plea breaches render detention unlawful and thus excuse a defendant's failure to make use of other available procedures, allowing instead resort to the exceptional writ of habeas corpus.

On the contrary, the lawfulness of Muhammad's detention at the time of his habeas petition depended not only on whether Muhammad's plea bargain had been broken, but also, assuming it had, on whether the breach of an unauthorized (and possibly illegal)[17] prosecutorial promise entitled Muhammad to specific performance of the bargain, to recission of his plea, to some other remedy, or even to no remedy at all. As noted above, whatever a court thinks the pertinent law may be as to unfulfilled plea bargains, the Supreme Court has made plain, in both *Santobello* and *Puckett,* that in the federal courts this is a fact-specific, totality-of-the-circumstances question addressed to the trial court. We, as noted, find this approach appropriate for those seeking relief in Kentucky courts for an unfulfilled plea bargain. The issue presented will generally not be a question suitable for a habeas hearing "summary in nature" in a collateral court. Certainly it was not suitable

here, where the habeas court's decision was made without any input from the allegedly breaching prosecutor and without consideration of Muhammad's prior opportunities to challenge the alleged breach, bypassed opportunities that cast an unfavorable light on Muhammad's contention that specific performance through a writ of habeas corpus was the only fair remedy remaining. Neither *Marcum,* nor any extension of *Marcum* in light of the seriousness attending plea breaches justifies Muhammad's resort to habeas corpus in the circumstances of this case where other avenues of relief were not only available, but more appropriate.

## CONCLUSION

In sum, while persons incarcerated for crimes in Kentucky are generally required to challenge and seek review of the judgments against them by means of the direct and collateral procedures outlined in *Gross v. Commonwealth,* an exception exists for prisoners who can show that those procedures are inadequate. They will be deemed inadequate, this Court held in *Marcum* where a summary proceeding will suffice to show that the Commonwealth's detention of the prisoner is unlawful because the judgment against him or her was void *ab initio.* In that type of case, the prisoner need not use the more cumbersome, time-consuming procedures typically employed but may seek prompt release by way of a writ of habeas corpus. Muhammad was not entitled to habeas relief in this case because he failed to establish that the ordinary post-conviction procedures

---

17. Kentucky Revised Statute 439.352 provides in pertinent part that "[r]ecommitment of a parolee to prison on a new sentence received for commission of a crime while on parole *shall automatically terminate* his parole status on any sentence on which he has not received a final discharge." (emphasis supplied). We do not decide the question, of

course, but arguably under this provision, Muhammad's conditional discharge, a form of parole as of the 2011 version of KRS 532.043, was revoked as a matter of law when Muhammad was recommitted to prison on his new RSP sentence. If so, then the plea bargain promising non-revocation was not just unauthorized, but was illegal.

were inadequate to remedy the alleged breach of his plea bargain. Notwithstanding that breach, the judgment based upon his guilty plea was not void. With respect to voidness, in *Puckett v. United States, supra,* the Supreme Court established that the breach of a plea bargain does not void the guilty plea, but rather is a trial error subject, like other trial errors, to the ordinary rules of preservation and forfeiture. We find that approach compelling and applicable here. The alleged breach of Muhammad's plea bargain, therefore, did not render the judgment against him void, *a la Marcum,* and it did not in any other way render the ordinary post-conviction review procedures inadequate so as to entitle Muhammad to habeas relief. Indeed, those typical review procedures were and are much better-suited to addressing a prosecutor's alleged breach of a plea bargain than the summary habeas procedure which provides for only one remedy, a release from custody. Finally, habeas was not available to Muhammad as a means of challenging directly the Parole Board's decision to revoke his postincarceration supervision. Such challenges, this Court has long held, implicate the writ of mandamus, not habeas.

Thus, although its reasoning differs somewhat from ours, the Court of Appeals correctly concluded that Muhammad's invocation of habeas corpus was not warranted. Accordingly, we affirm its Order reversing the grant of habeas relief, recognizing that the mootness of Muhammad's case renders our ruling of little consequence to him personally, *albeit* important for future cases of alleged plea-bargain breach by the Commonwealth.

All sitting. Minton, C.J.; Barber, Keller, Noble, and Venters, JJ., concur. Cunningham, J., concurs in result only by separate opinion.

CUNNINGHAM, J., CONCURRING IN RESULT ONLY:

I respectfully concur in result only. Since the Appellant is not incarcerated, I would dismiss this appeal as moot. The writ of habeas corpus ("you have the body") is a right deeply rooted in the English common law going back over one thousand years. It is the most cherished legal redress we possess. The availability of the writ of habeas corpus is the last line of defense against arbitrary imprisonment and punishment at the whim of the state. It is a personal right, not a public concern. The decision we are writing today will not affect one Kentucky citizen out of thousands. We should speak to this timeless principle frugally and only out of necessity. Therefore, it is my deep respect for this ancient remedy which causes me to urge judicial restraint from addressing the sacrament writ of habeas corpus without a body in need. *See Griffith v. Schultz,* 609 S.W.2d 125, 126 (Ky.1980) (citing *Hinton v. Byerly,* 483 S.W.2d 138 (Ky.1972) ("[w]hen appellant regained his freedom, his habeas corpus proceeding became moot.").